*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* POWELL/BEARINGER, Minors.

UNPUBLISHED
June 22, 2023

No. 363342
Genesee Circuit Court
Family Division
LC No. 12-128932-NA

*In re* BEARINGER, Minors.

No. 363344
Genesee Circuit Court
Family Division
LC No. 12-128932-NA

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 363342, respondent-mother appeals as of right an order terminating her parental rights to AP, TB, and BB under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), (g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm to the child if returned to the parent), and (*l*) (prior terminations under certain qualifying circumstances). In Docket No. 363344, respondent-father appeals as of right the same order, whereby the court terminated his parental rights to TB and BB[1] under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) (failure to rectify conditions other than those leading to adjudication), (g), and (j). On appeal, each respondent argues that the court erred by finding statutory grounds for termination and by finding that it was in the children's best interests to terminate parental rights. Respondents' appeals were consolidated.[2] For the reasons set forth in this opinion, we affirm in both appeals.

---

[1] The father of AP is not a party to this appeal.

[2] *In re Powell/Bearinger Minors*, unpublished order of the Court of Appeals, entered October 19, 2022 (Docket Nos. 363342 and 363344).

## I. BRIEF FACTUAL SUMMARY

Respondent-mother and respondent-father have an extensive history with child-protective services (CPS) due to their volatile relationship plagued by substance abuse and domestic violence. Respondent-mother is intellectually impaired and must rely on respondent-father or someone else for help in taking care of herself and parenting the children.

In the present case, the two older children, AP and TB, were removed from respondents' home in May 2019 based on concerns about respondents' substance abuse and escalating domestic violence in the home. Specifically, respondent-mother had been hospitalized for an overdose involving heroin or an "opiate pill" and there was an incident where respondent-father assaulted respondent-mother and severely cut himself in an apparent suicide attempt while intoxicated[3] and in the presence of the children. There were further allegations that respondents had also been using other drugs and that respondent-father had been treated at the hospital for an ibuprofen overdose and poisoning by an acid-derivative. The youngest child was removed upon his birth in December 2019, after he tested positive for THC at birth.

Respondents participated in services, and all three children were returned to them by early May 2020. However, there were more instances of domestic violence between respondents in front of the children during June 2020, including one particularly serious incident. During that incident, respondent-mother texted a Department of Health and Human Services (DHHS) caseworker and another person a photograph of herself covered in blood and requested that someone get her before respondent-father killed her. Respondents later attempted to claim that someone else had committed the assault against respondent-mother. All three children were again removed from respondents' care in July 2020.

Respondents then failed to participate adequately in services for a lengthy period of time. Respondents missed numerous parenting time visits, tested positive for substances during drug screens, and missed numerous drug screens. Respondent-mother did not attend substance abuse, domestic violence, and anger management services. There were reports that used needles were discovered in the bathroom after respondent-mother had used the bathroom during her parenting time visits. Additionally, there was testimony that both respondents would text the caseworker to report complaints about the other parent and that the caseworker believed that both respondents were committing domestic violence against each other. Nonetheless, both respondents denied that domestic violence was occurring.

Parenting time visits were suspended in January 2022 because of the substantial number of missed visits, as well as behavioral and emotional difficulties the children were having with respect to visits. These difficulties included night terrors, toileting accidents on the way to and from visits, and anxiety.

Shortly before the termination hearing in September 2022, respondent-mother reengaged in services by starting therapy with a new therapist and anger management, conflict resolution, and parenting classes. Respondent-father completed conflict resolution and anger management

---

[3] Respondent-father admitted that he was under the influence of alcohol and cocaine.

classes. He also began counseling but did not appear to be focusing on the primary barriers to reunification in those sessions.

The trial court, in terminating respondents' parental rights, relied largely on evidence that respondents had not adequately addressed substance-abuse and domestic-violence issues and had not shown benefit from services aimed at those issues. The trial court noted that respondents had completed services aimed at the same issues in 2019 and that the children were returned only to have the same issues arise again, necessitating the children's removal. The trial court also found that respondents waited too long to begin to reengage with services after the second removal.

## II. STANDARDS OF REVIEW

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3), and this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, although there is some evidence to support it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court also reviews for clear error a lower court's decision that termination is in a child's best interests. *Id*.

## III. THE CITED STATUTORY BASES FOR TERMINATION

MCL 712A.19b(3) states, in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-3-

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

* * *

(*l*) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of this chapter or a similar law of another state and the proceeding involved abuse that included 1 or more of the following, and the parent has failed to rectify the conditions that led to the prior termination of parental rights:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life-threatening injury.

(*vi*) Murder or attempted murder.

(*vii*) Voluntary manslaughter.

(*viii*) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

## IV. RESPONDENT-MOTHER

Respondent-mother's substance abuse and violent relationship with respondent-father precipitated the removal of the children in this case, and substance abuse and domestic violence continued to be problems throughout the duration of these proceedings.

There was adequate evidence that respondent-mother had not resolved either her substance-abuse issue or her domestic-violence issue at the time of the termination hearing. Respondent-mother initially completed services such that the children were returned home, but the children were removed again after only a short time in respondents' care. There was evidence that respondent-mother failed to engage in services for a substantial period, continued to engage in domestic violence with respondent-father in which each respondent was the aggressor at times, missed drug screens, tested positive for substances, used heroin and spent thousands of dollars on heroin in the months leading up to the termination hearing, and only reengaged in services relatively late in the case. Respondent-mother would not acknowledge that domestic violence was a problem, which prevented her from being accepted into services specifically tailored to addressing domestic violence issues.

This evidence was sufficient to support the court's conclusion that respondent-mother had not rectified her substance-abuse or domestic-violence issues during the more than three years that this case was pending. In addition, respondent-mother had services earlier in the case which led to the children being returned her, but almost immediately following their return, the same issues arose. A respondent in a child-protective proceeding has a responsibility to demonstrate compliance with, and benefit from, the service plan. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). As such, there was no reasonable likelihood that the conditions leading to adjudication would be rectified within a reasonable time considering the children's ages. On this record, respondent-mother has not demonstrated that the trial court clearly erred by finding that MCL 712A.19b(3)(c)(*i*) had been established as a statutory ground supporting the termination of respondent-mother's parental rights. Furthermore, respondent-mother's challenge to the trial court's findings under MCL 712A.19b(3)(g) and (j) is essentially predicated on her contention that she could have rectified these issues had she been given more time to engage in services. However, for the reasons already discussed, the trial court did not clearly err by finding to the contrary. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody," and a "parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White,* 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

Respondent-mother contends that a parent cannot have her parental rights terminated on the basis of her being a victim of domestic violence. See *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011) ("To be clear, it would be impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence. However, this termination was properly based on the fact that respondent's own behaviors were directly harming the children or exposing them to harm."). But the record contains evidence that respondent-mother was also a perpetrator in the ongoing domestic violence between respondent-mother and respondent-father. As this Court explained in *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022):

> The fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights. This is not to say that being a victim of domestic violence necessarily precludes termination of parental rights. To the extent such a victim is also a perpetrator, the commission of domestic violence is an appropriate concern. Similarly, termination may be "properly based on the fact

that [a] respondent's own behaviors were directly harming the children or exposing them to harm." [Citations omitted; alteration in original.]

As stated in *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." Thus, we need not address the trial court's finding under MCL 712A.19b(3)(*l*). We note, however, that the DHHS on appeal concedes that this ground was not proven.

Respondent-mother next argues that the trial court erred by finding that termination was in the children's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714; (quotation marks and citations omitted).]

Here, the domestic violence that had occurred between respondents and in front of the children was extreme, in one instance causing respondent-mother to bleed profusely and fear for her life. As noted, respondent-mother was also a perpetrator of domestic violence against respondent-father. Yet respondent-mother did not adequately address her issues with domestic violence. She was intellectually impaired and needed assistance from others to manage life and parenting, but her planned support system was the person (respondent-father) with whom she had a violent relationship, as well as respondent-father's mother. She was planning to live in respondent-father's mother's home.

The children had very problematic behaviors that improved once visitations were suspended. And it goes without saying that being cared for by someone with an unresolved drug-abuse problem, such as respondent-mother had, would not be in the children's best interests. Respondent-mother's problem with drugs was not minor; she had overdosed, and respondent-father referred to her as a "junkie." The case had been open for over three years, and the children deserved finality, stability, and permanency. Reviewing the entirety of the evidence presented, we conclude that the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent-mother's parental rights.

## V. RESPONDENT-FATHER

Respondent-father also challenges the trial court's statutory grounds and best-interest findings with respect to the termination of his parental rights.

The evidence reflected that there was an incident near the beginning of this case in which respondent-father punched respondent-mother in the face and choked her in front of the children while intoxicated by alcohol and cocaine. During this same incident, and again in front of the children, father severely cut himself with a knife in an apparent suicide attempt that led to his admission to a psychiatric facility. Respondent-father's pattern of substance abuse and domestic violence continued to be a problem for over three years as the case remained pending. Shortly after the children were returned to respondents, there was evidence that respondent-father severely assaulted respondent-mother in front of the children and caused her to fear for her life. The children were re-removed following this incident. While respondent-father contends that someone else assaulted respondent-mother, the trial court did not find this alternative explanation to be credible. The trial court's credibility determinations are entitled to deference. *In re Ellis*, 294 Mich App at 33.

Respondent-father then proceeded to miss numerous parenting time visits and drug screens, and also had drug screens that were positive for substances that included alcohol and cocaine. He also tested positive for Methadone despite not having a prescription for that drug. Moreover, respondent-father's positive drug screens continued to occur in the months leading up to the termination trial. Respondent-father's reliance on one hair follicle test that allegedly showed that he was negative for alcohol use, when considered in light of the other record evidence, does not demonstrate that he had conquered his substance abuse issues or that he was reasonably likely to do so in a reasonable time. There was a report that respondent-father hit BB's head against a wall during a visit, and there was evidence of continuing domestic violence between respondents. Yet, respondent-father denied that domestic violence was an issue and he thus completed a conflict resolution class instead of a class specifically aimed at addressing domestic violence.

In light of the record evidence, the trial court did not clearly err by finding that termination of respondent-father's parental rights was warranted under MCL 712A.19b(3)(j) because the children were likely to suffer harm, which can include emotional harm,[4] if returned to respondent-father because of his continuing substance abuse and domestic violence patterns. Because only one statutory ground is necessary for termination, *In re Ellis*, 294 Mich App at 32, we decline to address the court's ruling regarding subsection (c).

As for best interests, no clear error occurred with regard to the trial court's finding. Respondent-father missed several parenting time visitations. In February 2021, TB reported that respondent-father had hit BB's head against a wall. The caseworker recommended terminating respondents' parental rights because there was still domestic violence occurring, neither respondent was taking accountability for domestic violence, and respondents had not made progress in this area during the last three years. The children had very problematic behaviors that improved once visitations were suspended. And being cared for by someone with an unresolved drug-abuse problem that coincided with a tendency for domestic violence would not be in the

_____

[4] See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

children's best interests. Under all the circumstances, the trial court did not clearly err by finding that it would be in the children's best interests to terminate respondent-father's parental rights.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra